MARCUS MORTON & another *vs.* SILAS DEAN.

A sale at auction is within the statute of frauds, and the auctioneer is the agent of the buyer and the seller, and his memorandum takes a case out of the statute, as well where lands as where chattels are sold: But his memorandum must refer to the conditions of sale, and must state the material terms of the agreement, or the case will be within the statute.

An auctioneer, on selling real estate to S. D. at auction, after reading or exhibiting written conditions of sale, made this memorandum in writing: "Sale, on account of Messrs. Morton and Dean, assignees of the Taunton Iron Company, of the real estate, nail works, water privilege, buildings and machinery, agreeable to the plans and schedule herewith. Sale to Silas Dean for $30,300. April 5, 1843." *Held,* that as this memorandum did not contain nor refer to the conditions of sale, it did not take the case out of the statute of frauds.

ASSUMPSIT. The plaintiffs' declaration alleged that they, as assignees of the Taunton Iron Company, exposed certain real estate for sale, on the 5th of April 1843, and that the same was struck off to the defendant, who was the highest bidder therefor, for the sum of $30,300; that they executed and tendered to the defendant a good and sufficient deed of said estate; that the defendant refused to receive the deed, and to pay for the estate, according to the terms of the sale; that the plaintiffs afterwards, on the 17th of May 1843, offered the same estate for sale at public auction, and that it was sold for a less sum than was bid therefor by the defendant, at the first auction.

At the trial in the court of common pleas, before *Cushing,* J. the plaintiffs gave in evidence the following memorandum, made by the auctioneer at the time of the sale to the defendant: "Sale, on account of Messrs. Morton and Dean,

assignees of the Taunton Iron Company, of the real estate, nail works, water privilege, buildings and machinery, agreeable to the plan and schedule herewith. Sale to Silas Dean for $30,300. April 5, 1843." The plaintiffs also gave in evidence a deed of the estate sold, dated April 5th 1843, executed by them to the defendant, with evidence tending to show a tender of the same to him on the 27th of said April, and a refusal by him to receive it, and a second sale of said estate, by the plaintiffs, on the 17th of May 1843, for a sum less than $30,300. A plan of the estate was also given in evidence, and the court left it to the jury to decide whether it was the same plan that was exhibited by the auctioneer, at the time of the sale to the defendant.

It also appeared in evidence that written conditions of sale were exhibited or read by the auctioneer, at the time of said sale.

The defendant's counsel objected, that this action could not be maintained, for the following reason : " That the memorandum, offered and relied upon by the plaintiffs, is not such a memorandum as will bind the defendant, by taking the case out of the operation of the statute of frauds."

The court overruled this objection, and instructed the jury, that if they believed the plaintiffs' evidence, and were satisfied that there was no unfairness. in the first or second sale, the plaintiffs were entitled to recover, and that the measure of damages was the difference between the defendant's bid and the sum for which the property was afterwards sold, with interest from the time of the tender of the deed to the defendant.

The jury returned a verdict for the plaintiffs for $5,300, and the defendant alleged exceptions.

*Eddy*, for the defendant. The statute of frauds (Rev. Sts. *c.* 74, § 1) is a defence to this action : "No action shall be brought upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them, unless the promise, contract or agreement, upon which such action shall be brought, or some memorandum or note thereof,

shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized."

Assuming that an auctioneer is the buyer's agent, with authority to sign the buyer's name, yet the memorandum should purport to be an auctioneer's paper, in order to give it effect against the buyer. The memorandum in this case does not purport to be made by an auctioneer.

Besides; the memorandum does not contain the terms or conditions of sale, nor make any reference to them. This defect is conclusive against the maintenance of the action. 2 Kent Com. (5th ed.) 511. *Hinde* v. *Whitehouse,* 7 East, 558. *Kenworthy* v. *Schofield,* 2 Barn. & Cres. 945. *Atwood* v. *Cobb,* 16 Pick. 230. *Clinan* v. *Cooke,* 1 Scho. & Lef. 22. *Blagden* v. *Bradbear,* 12 Ves. 471. *Grant* v. *Naylor,* 4 Cranch, 224. *Boydell* v. *Drummond,* 11 East, 142. *Powell* v. *Edmunds,* 12 East, 6. *Trustees of Baptist Church in Ithaca* v. *Bigelow,* 16 Wend. 28. *Jacob* v. *Kirk,* 2 M. & Rob. 221. *Freeport* v. *Bartol,* 3 Greenl. 340.

Is an auctioneer the agent of both parties, with authority to make a memorandum of the contract, and sign their names? Even in England, it is held that he is not, in all cases, and of course. *Bartlett* v. *Purnell,* 4 Adolph. & Ellis, 792. And judges in England have expressed their regret that the first case in which a factor or auctioneer was held to be such agent, was not overturned before any others were decided on it. See 2 Taunt. 45. 3 Ves. & Beames, 59. 1 Jac. & Walk. 351. Chief Justice Eyre, and Sir William Grant, and the court of common pleas, held that though an auctioneer was decided to be agent of both parties in the sale of chattels, yet that he was not such agent in a sale of land. *Stansfield* v. *Johnson,* 1 Esp. R. 101. *Buckmaster* v. *Harrop,* 7 Ves. 341. *Walker* v. *Constable,* 1 Bos. & Pul. 307. As this question has never been decided in this Commonwealth, the court can pause at the threshold, (to use Mr. Justice Dewey's language, in 9 Met. 488,) before they have embarrassed themselves by any unfortunate precedent of their own.

*Eliot & N. Morton*, for the plaintiffs. This court has decided, conformably to the English decisions, that sales at auction are within the statute of frauds. *Davis* v. *Rowell*, 2 Pick. 64. And the decisions in the different States, as well as in England, have settled the doctrine, that an auctioneer is the agent of both parties, whether in the sale of goods or of real estate, and has authority to sign the promise, contract or agreement, or a memorandum or note thereof, for the party to be charged therewith. Story on Agency, § 27. 2 Kent Com. (5th ed.) 539. *Cleaves* v. *Foss*, and *Inhabitants of Alna* v. *Plummer*, 4 Greenl. 1, 258. *McComb* v. *Wright*, 4 Johns. Ch. 659, 666. *Bird* v. *Boulter*, 4 Barn. & Adolph. 443. *Gordon* v. *Sims*, 2 McCord Ch. 165. Chit. Con. (5th Amer. ed.) 304, 403. 1 Greenl. on Ev. § 269.

The memorandum, in this case, if it had been signed by the defendant, would have been sufficient to bind him; and a memorandum, when signed by the auctioneer, requires no additional particularity. See *Penniman* v. *Hartshorn*, 13 Mass. 91. *Egerton* v. *Mathews*, 6 East, 307. *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238. *Hawkins* v. *Chace*, 19 Pick. 502. *Batturs* v: *Sellers*, 5 Har. & J. 117. *Hicks* v. *Whitmore*, 12· Wend. 548. *Clason* v. *Bailey*, 14 Johns. 484. 1 Hovenden on Frauds, 195.

*Coffin* replied.

BY THE COURT. A sale at auction is within the statute of frauds, and the auctioneer, who makes the sale, is the agent of both parties, and his memorandum will take the case out of the statute, as well when lands as when chattels are sold. But the memorandum of sale must refer to the conditions of sale, or the case will be within the statute. Where the connexion between the memorandum and the conditions is to be proved entirely by parol evidence, it is within the mischief intended to be prevented by the statute. The terms of the agreement, which are material, must be stated in writing. As the memorandum, in this case, does not refer to the conditions of sale, the sale itself cannot be enforced. The authorities are conclusive on these points.

*Verdict set aside.*